# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**DANA A. MATTHEWS**                                    **CIVIL ACTION NO.**

**VERSUS**                                                     **16-621-BAJ-EWD**

**J & J SERVICE SOLUTIONS, LLC**

## RULING ON DEFENDANT'S MOTION TO COMPEL DISCOVERY AND INITIAL DISCLOSURES

Before the court is a Motion to Compel Discovery and Initial Disclosures (the "Motion to Compel")[1] filed by defendant, J&J Service Solutions, LLC ("Defendant"). Although no formal opposition to the Motion to Compel has been filed, on March 3, 2017 counsel for both parties participated in a telephone status conference with the court to discuss the Motion to Compel.[2] Following that conference, the parties were instructed to meet and confer regarding the Motion to Compel, and Defendant filed two Supplemental Certifications regarding the parties' efforts to resolve the issues raised in the Motion to Compel without court intervention.[3] For the reasons set forth herein, Defendant's Motion to Compel is GRANTED IN PART and DENIED IN PART.

## I.        Background

On September 19, 2016, Plaintiff, Dana A. Matthews ("Plaintiff") filed a Complaint against Defendant alleging employment discrimination and retaliatory discharge.[4] Plaintiff alleges that she "is a Caucasian female who was formerly employed by [Defendant] in the capacity of team lead for the purpose of performing retail remodeling contracts for various retail outlets, and in

---

[1] R. Doc. 12.

[2] R. Doc. 19.

[3] R. Docs. 21 & 23. Defendant also filed a Supplemental Memorandum in Support of the Motion to Compel setting forth an updated status regarding the Motion to Compel. R. Doc. 18.

[4] R. Doc. 1.

particular, Pep Boys."[5]  Plaintiff alleges that she reported to Chris Doenges, "who was then project manager of a job for Pep Boys in Columbus, Ohio…"[6] and that during the course of that project, she was subjected "to constant demeaning, sexist, insulting, and derogatory comments by Mr. Doenges."[7]  Plaintiff further alleges that following her complaints regarding Mr. Doenges and while working on another project for Defendant, she was "without warning, summarily and unjustifiably discharged" from Defendant's employment.[8]  Plaintiff alleges that "not only was she a victim of sexist discrimination in the workplace by defendant, but her discharge from employment with defendant was unlawful and retaliatory in nature due to her attempts to inform defendant's administration of the conduct of Chris Doenges…."[9]

On February 3, 2017, Defendant filed the instant Motion to Compel.[10]  In the Motion to Compel, Defendant asserted that it served Defendant's First Set of Interrogatories and Requests for Production of Documents (the "Discovery Requests") on Plaintiff on November 23, 2016 and that Plaintiff had failed to timely provide initial disclosures and failed to timely respond to the Discovery Requests.  Thereafter, Defendant submitted a Supplemental Memorandum in Support of the Motion to Compel (the "Supplemental Memorandum").[11]  In the Supplemental Memorandum, Defendant explained that following the filing of the Motion to Compel, Plaintiff submitted initial disclosures as well as responses to the Discovery Requests; however, Defendant asserted that Plaintiff's responses to the Discovery Requests included various objections that had

---

[5] R. Doc. 1, ¶ 4.

[6] R. Doc. 1, ¶ 4.

[7] R. Doc. 1, ¶ 5.

[8] *See*, R. Doc. 1, ¶¶ 6-12.

[9] R. Doc. 1, ¶ 13.

[10] R. Doc. 12.

[11] R. Doc. 18.

been waived due to Plaintiff's failure to timely respond.[12]   In addition to asserting that certain objections to the Discovery Requests were waived, Defendant also asserted that Plaintiff failed to include a sworn verification and that the document production was not Bates labeled and that certain documents were illegible or had part of their text cut off.[13]

On March 3, 2017, counsel for the parties participated in a telephone status conference with the undersigned to discuss the Motion to Compel.[14]   During the conference, counsel for Defendant confirmed that Plaintiff had produced initial disclosures, a signed verification, HIPAA release, and Request for Transcript of Tax Return.  Counsel for Defendant additionally explained that while Plaintiff had produced some documents, those documents were not Bates labeled and it appeared that Plaintiff had not provided certain electronically stored information.  Counsel for Plaintiff agreed to Bates label Plaintiff's production of documents and make an effort to provide more legible copies of documents previously produced, if available.  The court also acknowledged defense counsel's concern regarding the production of electronically stored information, and instructed counsel for Plaintiff to revisit this issue to make a determination regarding the accessibility of electronically stored information (including emails and archived social media) via a device other than the device purportedly lost by Plaintiff due to flooding.  The undersigned ordered that, in the event counsel for Plaintiff confirmed that Plaintiff had produced all documents within her possession and control (including all electronically stored information), Plaintiff was to submit a supplemental verification attesting to that fact no later than March 20, 2017.  Further, the court required the parties to confer regarding the remaining issues raised in Defendant's Motion to Compel, and ordered Defendant to file a Supplemental Certification setting forth, *inter alia*,

---

[12] R. Doc. 18, p. 2.

[13] R. Doc. 18, p. 2.

[14] R. Doc. 19.

whether the parties were able to resolve any of the remaining issues raised in the Motion to Compel.[15]

On March 20, 2017, Defendant filed the required Supplemental Certification for the Motion to Compel (the "First Supplemental Certification").[16] Therein, Defendant reported that following a March 17, 2017 telephone conference, Plaintiff had provided the following signed verification:

> I have answered the Interrogatories and Request for Production of Documents and all of the answers provided therein are true and correct to the best of my knowledge, information and belief; I have provided all information within my possession and control, including electronically store [sic] information and have bate [sic] stamped all documents provided to counsel for J&J Services Solutions, LLC.[17]

Defense counsel further stated that she received a disc containing over 300 documents on the date the Supplemental Certification was due, but had not had an opportunity to review the production "to determine whether outstanding issues have been resolved."[18] Additionally, counsel for Defendant explained that Plaintiff's counsel's assistant has indicated that Plaintiff was working to provide "better answers" to the Discovery Requests, but that "[i]t is not clear when supplemental responses will be received."[19] Based on the First Supplemental Certification, the court ordered Plaintiff provide Defendant with supplemental responses to the Discovery Requests by April 4, 2017.[20] The court further ordered Defendant to file either a Second Supplemental Certification

---

[15] R. Doc. 19. The court reserved all remaining issues raised in the Motion to Compel, including Defendant's request that Plaintiff be ordered to reimburse J&J for its reasonable attorney's fees associated with the filing of the Motion to Compel.

[16] R. Doc. 21.

[17] R. Doc. 21-4.

[18] R. Doc. 21, p. 3.

[19] R. Doc. 21, p. 4.

[20] R. Doc. 22.

setting forth the status of the remaining issues raised in the Motion to Compel or a Motion to Withdraw the Motion to Compel by April 11, 2017.[21]

On April 11, 2017, Defendant filed its Second Supplemental Certification for the Motion to Compel Discovery.[22] Therein, Defendant asserts that despite this court's order, Defendant did not receive any supplemental responses by April 4, 2017 or thereafter,[23] and that Plaintiff's counsel's assistant informed Defendant that Plaintiff "does not have any further discovery responses to provide."[24] Defendant therefore contends that Plaintiff has failed to: (1) submit written responses to interrogatories and requests for production with the untimely objections omitted; and (2) supplement her written responses to Interrogatories numbers 2, 3, 4, 5, 7, 10, 11, 12, 18, and 19 as well as Requests for Production numbers 7, 8, 15, 18, 23, 26, 27, and 40.[25]

As an initial matter, in light of the parties' representations during the March 3, 2017 telephone conference and Defendants' subsequent certifications and Supplemental Memorandum,[26] the court DENIES as moot Defendant's Motion to Compel to the extent the motion seeks an order compelling Plaintiff to provide Initial Disclosures, a sworn verification, Bates labeled documents, and/or clear/more legible copies of certain documents.

---

[21] R. Doc. 22.

[22] R. Doc. 23.

[23] R. Doc. 23, p. 1.

[24] R. Doc. 23-1.

[25] R. Doc. 23, p. 2. With respect to Plaintiff's production of documents, Defendant states that "[w]hile there are still documents that appear cut off, the undersigned can address those matters in a deposition with Plaintiff as her counsel has made clear that he has reproduced the documents exactly as he received them." R. Doc. 23, p. 2.

[26] R. Docs. 18, 19, 21 & 23.

## II. Law and Analysis

### A. Legal Standards

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

"Generally, the scope of discovery is very broad, though it is not unlimited." *Heck v. Buhler*, 2015 WL 7432367, at * 2 (M.D. La. Nov. 23, 2015) (citing *Crosby v. Louisiana Health Serv. & Indent. Co.*, 647 F.3d 258, 264 (5th Cir. 2011)). *See also*, *Southern Filter Media, LLC v. Halter*, 2014 WL 4278788, at * 3 (M.D. La. Aug. 29, 2014) ("The general scope of discovery is broad and permits the discovery of 'any nonprivileged matter that is relevant to any party's claim or defense.' The rules governing discovery are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials.") (internal citations omitted). "It is well established that the scope of discovery is within the sound discretion of the trial court." *Southern Filter Media, LLC v. Halter*, 2014 WL 4278788, at * 3 (M.D. La. Aug. 29, 2014). "For purposes of discovery, relevancy is construed broadly to encompass 'any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue related to the claim or defense of any party.'" *Fraiche v. Sonitrol of Baton Rouge*, 2010 WL 4809328, at *1 (M.D. La. Nov. 19, 2010) (quoting *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991); Fed. R. Civ. P. 26(b)(1)). However, the court must limit the frequency or extent of discovery if it determines that:

"(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

Motions to compel discovery responses are governed by Rule 37(a) of the Federal Rules of Civil Procedure. "Rule 37(a)(3)(B) provides that a party seeking discovery may move for an order compelling production or answers against another party when the latter has failed to produce documents requested under Federal Rule of Civil Procedure 34 or to answer interrogatories under Federal Rule of Civil Procedure 33." *Gondola v. USMD PPM, LLC*, 2016 WL 3031852, at *2 (N.D. Tex. May 27, 2016) (citing Fed. R. Civ. P. 37(a)(3)(B)(iii)-(iv)). "The party resisting discovery must show specifically how each discovery request is not relevant or otherwise objectionable." *Gondola*, 2016 WL 3031852 at *2 (citing *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)). In response to a request for production under Rule 34, "[f]or each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B). Further, "an objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C). In response to an interrogatory under Rule 33, "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). In addition, "[t]he grounds for objecting to an interrogatory must be stated with

specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4).

### B. Sufficiency of Plaintiff's Discovery Responses

Per the instant Motion to Compel as supplemented and modified by Defendant's additional briefing and certifications, Defendant seeks an order from this court compelling: (1) Plaintiff to submit written responses to the Discovery Requests, "with the untimely objections omitted"; and (2) Plaintiff to supplement written responses to certain discovery requests.[27]

### i. Untimely Objections

"'As a general rule, when a party fails to object timely to interrogatories, production requests, or other discovery efforts, objections thereto are waived.'" *Scott v. United States Postal Service*, 2016 WL 7440468, at * 4 (M.D. La. Dec. 27, 2016) (quoting *In re United States*, 864 F.2d 1153, 1156 (5th Cir. 1989)). *See also*, *B&S Equip. Co. v. Truckla Servs., Inc.*, 2011 WL 2637289, at *6 (E.D. La. July 6, 2011) (finding waiver of all objections to "discovery requests based on relevance, unduly burdensome, over broad, or any other objection not grounded on the attorney client or the work product privilege."). The time period to respond to interrogatories and requests for the production of documents is thirty (30) days after service under Fed. R. Civ. P. 33(b)(2) and 34(b)(2)(A). *See also*, *Johnson v. PPI Technology Services, L.P.*, 2013 WL 4508128, at *1 (E.D. La. Aug. 22, 2013) (finding plaintiffs and third-party defendant waived their objections to defendant's discovery requests by not objecting to the requests until more than two and a half

---

[27] The undersigned notes that while Defendant's Second Supplemental Certification seeks an order compelling Plaintiff to "supplement written responses" to certain interrogatories and requests for production, the court's review of Defendant's February 21, 2017 letter outlining the purported deficiencies in Plaintiff's responses asks Plaintiff to provide additional documents in response to the Requests for Production. *See*, R. Doc. 18-3. Accordingly, the court understands Defendant's Motion to Compel, as supplemented and modified by Defendant's additional briefing and certifications, to seek an order compelling Plaintiff to produce additional documents in response to certain Requests for Production.

months after the requests were propounded); *B&S Equipment Co., Inc. v. Truckla Services, Inc.*, 2011 WL 2637289, at *4 (E.D. La. July 6, 2011) (finding that defendants had waived all objections to plaintiff's discovery requests based on relevance, over breadth, unduly burdensomeness, or any other objection unrelated to privilege by failing to timely respond to plaintiff's discovery requests). Further, the Fifth Circuit has held that conclusory objections that the requested discovery is "overly broad, burdensome, oppressive and irrelevant" are insufficient to voice a successful objection to an interrogatory or request for production. *McLeod, Alexander, Powel and Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) (quoting *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982)).

Defendant propounded the Discovery Requests on November 23, 2016,[28] and Plaintiff provided her responses on February 8, 2017 (*i.e.*, after Defendant filed the instant Motion to Compel).[29] Accordingly, Plaintiff's responses were submitted well after the thirty-day time period set forth under Fed. R. Civ. P. 33(b)(2) and 34(b)(2)(A).[30] Plaintiff has provided no basis for this court to find an exception to the general rule that untimely objections (other than with respect to privilege) are waived. Further, a review of Plaintiff's objections to the Discovery Requests shows that, to the extent Plaintiff ultimately objected to the discovery requests, her objections tended to

---

[28] R. Doc. 12-2.

[29] R. Doc. 18-1.

[30] In the Motion to Compel, Defendant explains that "[a]though no request for an extension was made, on December 20, 2016, counsel for Defendant sent correspondence to Plaintiff's counsel via electronic mail offering to extend the deadline for Plaintiff to submit her discovery responses until January 6, 2017. No response was ever received." R. Doc. 12, p. 1. Defendant further asserts that "[a]s of January 10, 2017, Plaintiff had still not provided her Initial Disclosures or responses to discovery, and no request for extension was made. The undersigned sent a letter to Plaintiff's counsel via electronic and U.S. mail providing an additional extension of time through January 13, 2017." R. Doc. 12, p. 2. Defendant asserted that as of the filing of the Motion to Compel on February 3, 2017, no responses to the Discovery Requests had been provided. Accordingly, Plaintiff not only failed to provide responses to the Discovery Requests within the thirty day period otherwise provided by Fed. R. Civ. P. 33(b)(2) and 34(b)(2)(A), but also apparently failed to seek any extension of time within which to provide her responses, and failed to provide responses within the time provided by Defendant's unilateral extensions.

be boilerplate objections related to over breadth of the requests and relevancy.[31]  The undersigned finds that Plaintiff has waived such untimely and non-specific objections (other than those related to privilege).  However, despite these objections, and with the exception of Request for Production number 23 (discussed below), Plaintiff also provided a substantive response to each objected-to Interrogatory or Request for Production.  Moreover, it appears that where Plaintiff had documents responsive to a particular request, Plaintiff produced those documents subject to her objections.[32]  Accordingly, while Plaintiff's untimely responses have resulted in a waiver of her objections, in the interest of efficiency, the court will not require Plaintiff to resubmit her responses to Interrogatory numbers 2, 3, 6, 7, 9, and 16 or Requests for Production numbers 1, 2, 4, 11, 32, 33, 37, 39, or 41 with such waived objections omitted.  Additionally, without further information from Defendant regarding particular documents that were purportedly withheld based on Plaintiff's objections, the court cannot find that an order compelling Plaintiff to produce additional documents should issue.  Accordingly, the court DENIES Defendant's Motion to Compel to the extent it seeks to compel Plaintiff to provide responses to Interrogatory numbers 2, 3, 6, 7, 9, and 16 or Requests for Production numbers 1, 2, 4, 11, 32, 33, 37, 39, or 41 with the untimely objections omitted.

---

[31] *See*, R. Doc. 18-1.  Plaintiff objected to Interrogatories number 2 and 3 on the basis of over breath, relevancy, and potential privacy issues.  Plaintiff objected to Interrogatory number 6 as premature and vague, and also asserted that the request sought counsel's mental impressions.  Plaintiff objected to Interrogatory number 7 on the basis of attorney work product, and to Interrogatory number 9 on the basis of over breadth, vagueness, and relevancy.  Plaintiff objected to Interrogatory number 16 as seeking irrelevant information.  Plaintiff objected to Request for Production number 1 on the basis of the request was "overly broad and vague and insusceptible of a response."  Plaintiff objected to Request for Production number 2 as vague and seeking documents that are in Defendant's possession.  Plaintiff objected to Request for Production number 4 as vague and objected to Request for Production number 11 because the requested documents "are in the public domain and equally available to defendant."  Plaintiff objected to Requests for Production numbers 32, 33, 37, and 39 based on her assertion that the documents requested "are in the possession of the defendant in the form of payroll, time and flight schedule records on the plaintiff and other male co-employees."  Plaintiff objected to Request for Production number 41 by asserting that the request "seeks documents that violative [sic] the plaintiff [sic] rights to privacy and that are irrelevant."

[32] *See*, R. Doc. 18-1, Plaintiff's responses to Requests for Production numbers 2, 4, 32, and 41.

With respect to Request for Production number 23, Plaintiff objected on the basis that the request "seeks documentation of an irrelevant nature that is also violative [sic] of plaintiff's rights to privacy."[33] Request for Production number 23 requests that Plaintiff:

> Produce any and all documents related to your attempts to correspond or communicate with current or former employees of J&J by electronic means, including, but not limited to, Facebook, Myspace, Twitter, LinkedIn, Snapchat, text message, and email from October 28, 2014 through the present.

The undersigned finds that Plaintiff has waived her objections to Request for Production number 23 and therefore GRANTS Defendant's Motion to Compel a written response to Request for Production number 23. The court ORDERS Plaintiff to submit a response to Request for Production number 23, without objections (with the exception of any objections pertaining to any applicable privileges and/or immunities), no later than fourteen (14) days from the date of this Ruling and Order.

### ii. Supplemental Responses

Defendant also seeks an order compelling Plaintiff to supplement written responses to certain specific Discovery Requests.[34] When considering Defendant's Motion to Compel additional responses to these requests, the undersigned keeps in mind Plaintiff's March 17, 2017 sworn verification, in which she stated that she "answered the Interrogatories and Request for

---

[33] R. Doc. 18-1.

[34] Defendant also asserts that Plaintiff's responses to Requests for Production numbers 18 and 26 are deficient. In its February 21, 2017 letter setting out Defendant's position regarding the deficiencies in Plaintiff's responses, Defendant asked Plaintiff to execute and return a HIPAA release and an IRS Form 4506-T to address issues related to these two Requests for Production. R. Doc. 18-3. During the March 3, 2017 telephone conference, counsel for Defendant informed the court that Plaintiff had provided, *inter alia*, a signed HIPAA release and a Request for Transcript of Tax Return immediately prior to the conference. *See*, R. Doc. 19. Accordingly, the undersigned considers the Motion to Compel with respect to Requests for Production numbers 18 and 26 to be moot and DENIES the Motion to Compel with respect to those requests. To the extent Defendant's Second Supplemental Certification includes these requests as presenting issues that "still remain today," the court expresses some concern regarding the level of specificity set forth in the Second Supplemental Certification and Defendant's failure to withdraw its Motion to Compel regarding these requests.

Production of Documents and all of the answers provided therein are true and correct to the best of my knowledge, information and belief; I have provided all information within my possession and control, including electronically store [sic] information…"[35] Despite this sworn verification, Defendant asserts that an order compelling Plaintiff to supplement her responses to the following Discovery Requests should be issued:

> **INTERROGATORY NO. 2**: State whether you personally have ever communicated with any past or present employees of J & J concerning the allegations raised in your Complaint since your separation from employment with J & J. If so, explain in detail each such communication (including those by phone, Internet, and in person); state the date of the communication; with whom you communicated; the substance of the communication; identify any witnesses to the conversation; and identify all documents concerning or exchanged during the communication.

> **ANSWER TO INTERROGATORY NO. 2:** Objection. Interrogatory Number Two seeks information which is overly and unduly burdensome and irrelevant to the instant litigation and violative of the privacy of plaintiff. Plaintiff further objects to said interrogatory in that same seeks information which was prepared in anticipation of litigation. Subject to said objection, and without waiving same, plaintiff has communicated at various times before and since her discharge by defendant with the following former co-employees: Mike Daw, Keith Jones, John Stennis, Tammy Latimer, Araina Deslonie, Jerry Rools, Rhomsa Lee, Mike Vance, Kelly Costanza and others that plaintiff cannot remember at present. Plaintiff cannot recall the dates or modes of communication or the exact substance of the communications, but does recall that said communications involved the discriminatory, sexist, unlawful and humiliating nature of the comments and treatment of women in general by Chris Doenges, and plaintiff particularly, while employed by defendant and management's refusal to do anything about it.

---

[35] R. Doc. 21-4.

With respect to Interrogatory number 2, Defendant asserts that Plaintiff's response is deficient in that it does not state whether there were any witnesses to the conversations and does not identify any documents associated with or exchanged during the conversations.[36]

> **INTERROGATORY NO. 3**: Identify all persons whom you believe have any information or knowledge, or claim to have the same, with respect to any facts or matters relating to each and every allegation contained in your Complaint, and with respect to each such person, state the following: a) the subject matter of each such person's knowledge; b) the date, place and circumstances of the obtaining of such knowledge or information; c) whether such person has been interviewed by you or by your representative or counsel either prior to or subsequent to the commencement of the present action; d) whether you or your representative has obtained statements, reports, memoranda or recordings from any individuals identified; and e) the current address and telephone number for the witness.

> **ANSWER TO INTERROGATORY NO. 3:** See response to Interrogatory Number Two above, as well as my husband. My attorney has not yet obtained any recorded statements.

Defendant contends Plaintiff's response to Interrogatory number 3 is deficient because it fails to: "(1) identify the subject matter of any information known by Plaintiff's husband or describe how he obtained such information; (2) state whether Plaintiff's husband or any of her former co-workers have been interviewed in connection with this litigation; or (3) provide current contact information for any of the individuals identified."[37]

> **INTERROGATORY NO. 4**: Describe in detail each and every written and oral evaluation, criticism, counseling, warning or discipline you received during your employment with J & J including, the date(s); action(s) taken; the substance of the communications; the supervisor(s) involved; and any witness thereto.

---

[36] *See*, R. Doc. 18-3, February 21, 2017 letter from Defense counsel outlining purported deficiencies in Plaintiff's responses to the Discovery Requests.

[37] R. Doc. 18-3.

**ANSWER TO INTERROGATORY NO. 4:** Other than below, to the best of my recollection, I received no oral or written warnings or criticisms during my employment with defendant other than my unjustified discharge from employment. I was unjustifiably sent home and suspended for two weeks once from a Pep Boys job in Baltimore, MD for "failing to return a rental car" that I could not return. Mike Daw was a witness. Chris Doenges was the supervisor.

Defendant asserts that Plaintiff's response to Interrogatory number 4 is deficient because it "does not provide any information regarding the date of her alleged suspension."[38]

**INTERROGATORY NO. 5**: If you contend there were individuals similarly situated to you who were treated differently or more favorably, explain in detail and identify; the individual(s), including their job title(s) and duties; the dates on which the incidents of different or favorable treatment occurred; who supervised the individual(s); and describe the treatment you assert was different, including the basis upon which you contend Defendant treated you differently; to whom you at J & J reported this alleged treatment; date(s) on which you made the report(s); and identify any documents that support your answer.

**ANSWER TO INTERROGATORY NO. 5:** Tammy Latimer and Kelly Costanza-Constantly harassed by Chris Doenges. He wanted me to find ways to get rid of them. They were called "useless", "nigger lovers" and other denigrating remarks. Rhonda Lee-Was constantly harassed by Chris Doenges and I was instructed by John Whipple to tell her that the company had received complaints about her from Floor & Decor corporate offices, which was not true. Ariana Deslonie-Was harassed by Chris Doenges on the job and unjustifiably sent home under the allegation that she could not lift tires. Contrasted with how he treated Richard Boulden, Oscar Sanchez who were allowed to work extra hours, overlooked mistakes, showing up late at work, falsifying work hour records. Female employees were constantly being sent home early, while male employees were allowed to work over.

---

[38] R. Doc. 18-3.

Defendant contends Plaintiff's response to Interrogatory number 5 is deficient because it does not specify dates of the alleged incidents of disparate treatment, whether Plaintiff ever reported the alleged incidents, and fails to identify any documents that support her response.[39]

> **INTERROGATORY NO. 7**: Describe in detail each and every item of damages (Including for purposes of this Interrogatory, your claim for attorneys' fees), for which you are making a claim in this action, specify the amount for each item, specify the basis of liability as to J & J, and provide an explanation as to how each such amount was calculated, including a listing and description of each of the factors used.
>
> **ANSWER TO INTERROGATORY NO. 7:** Objection. Interrogatory Number Seven seeks information that constitutes attorney work product. Subject to said objection, and without waiving same, plaintiff herein provides the following: (A) Back pay from August 12, 2015 to date of verdict; (B)$150,000.00 in compensatory damages for emotional distress, mental anguish, humiliation and damaged reputation; (C) $100,000.00 in punitive damages; (D)$50,000.00 in attorney's fees; (E) Legal interest on all sums from date of judicial demand, until paid; (F) All costs of court.

Defendant asserts this response "is incomplete because it neither specifies the basis for J&J's alleged liability, nor describes how the corresponding monetary figure was calculated for each item of damages listed."[40]

> **INTERROGATORY NO. 10**: Please describe in detail all efforts you have made to find employment (including self-employment) from the date you were discharged by J & J to the present, including the name and address of every prospective employer, employment agency, placement office, or search firm with which you have had any contact whatsoever, the date and purpose of such contact, and the results of your efforts.
>
> **ANSWER TO INTERROGATORY NO. 10:** Plaintiff applied online to the following employers in the referenced timeframe: Office Depot; Pet Smart; Kelly Services; Turner Industries, Drive Line, Academy Sports, Lowe's; Target, Bass Pro Shop, CVS Health;

[39] R. Doc. 18-3.

[40] R. Doc. 18-3.

BREC; Martin Brower; CB Servicing; Associated Grocery; Enterprise Rent-A-Car; others that plaintiff does not recall.

Defendant contends Plaintiff's response to Interrogatory number 10 is incomplete because Plaintiff has not describe the outcome of her efforts to seek employment with any of the listed companies.[41]

**INTERROGATORY NO. 11**: Describe in detail all employment (including part time, temporary and permanent self-employment) held by you since leaving J & J through the date of trial in this matter, and for each such employer, please state the following: the name of the employer; the address where you work(ed); your dates of employment your position(s) or title(s); the name of your immediate supervisor; the pay and benefits you received; and the reason for any termination, layoff or resignation.

**ANSWER TO INTERROGATORY NO. 11:** None until March 1, 2017. Plaintiff hired by NAPA Auto Parts, Atlanta, GA at $20.00/hour.

Defendant contends Plaintiff's response to Interrogatory number 11 is incomplete, "in that it fails to provide any of the following information with respect to her employment with NAPA Auto Parts: (1) the address of the store or facility where Plaintiff worked; (2) her job title or position; (3) the name of Plaintiff's immediate supervisor; (4) the benefits she received, if any; and (5) the date and reason Plaintiff's employment was terminated (if applicable). Additionally, Plaintiff lists a date in March 2017 as the commencement of her employment. If this should be March 2016, please supplement the response."[42]

**INTERROGATORY NO. 12**: To the extend not provided in response to any other interrogatory, explain in detail every source of income you have had since your last day of work with J & J, through the date of trial in this matter, setting forth the amount of income from each source and the dates received, including, but not limited to earnings, gifts, compensation, and benefits (including wages, unemployment compensation, welfare/TANF payments, food stamps, social security benefits, vacation benefits, health insurance, overtime pay, disability pay, workers' compensation, sick leave

---

[41] R. Doc. 18-3.

[42] R. Doc. 18-3.

pay, holiday pay, income from any pension, profit-sharing or annuity plan or any other income or benefit).

**ANSWER TO INTERROGATORY NO. 12:** See response to Interrogatory Number Eleven above. Additionally, plaintiff did receive unemployment compensation benefits for a short time.

Defendant asserts Plaintiff's response to Interrogatory number 12 is deficient because it does not specify the amount of income Plaintiff received in connection with her employment with NAPA Auto Parts or her claim for unemployment compensation benefits.[43]

**INTERROGATORY NO. 18**: Identify for the period from October 28, 2014, through the present, whether you or other household members owned or possessed a personal data assistant, iPhone, iPad, laptop, desktop computer or other electronic system, whether located at your primary residence or elsewhere, and for such item of equipment: specify the type of equipment and whether you used such equipment or stored material thereon, at any time and in any manner, that is related to J & J and/or the facts giving rise to the claims asserted in this lawsuit.

**ANSWER TO INTERROGATORY NO. 18:** Yes. I had a laptop and my husband had a PC.

Defendant contends Plaintiff's response to Interrogatory number 18 is incomplete because it "does not state whether the computers in question were ever used to store information related to Plaintiff's employment with J&J or the events at issue in this lawsuit."[44]

**INTERROGATORY NO. 19:** Identify all social networking sites (i.e. Facebook, LinkedIn, Friendster, Pinterest, Google+, Instagram, etc.) on which you currently maintain a profile or previously maintained a profile during your employment with J & J to present, including the profile name used and web address for your profile.

**ANSWER TO INTERROGATORY NO. 19:** Facebook, Dana Matthews.

---

[43] R. Doc. 18-3.

[44] R. Doc. 18-3.

Defendant asserts Plaintiff's response to Interrogatory number 19 is "incomplete insofar as it fails to include the URL address for Plaintiff's Facebook profile."[45]

The undersigned finds that Plaintiff has sufficiently responded to Interrogatories 2, 3, 4, 5, 7, 10, 11, 12, 18, and 19. To the extent Defendant seeks to elicit additional information from Plaintiff, the court finds that such information would more appropriately be sought via Plaintiff's deposition. Moreover, to the extent Defendant complains that Plaintiff has failed to identify certain documents, the court notes that Plaintiff has submitted a sworn verification attesting that she has provided all information within her possession and control. Accordingly, the court DENIES Defendant's Motion to Compel Plaintiff to supplement her responses to Interrogatories 2, 3, 4, 5, 7, 10, 11, 12, 18, and 19.

> **REQUEST FOR PRODUCTION NO. 7**: Produce all documents that evidence or refer to communications, whether oral or written, between you and any current or former employee or agent of J & J related to the subject matter of your claims in this suit, including, but not limited to, email communications, notes memoranda, text messages, instant messages, and any tape or digital recordings (whether audio or visual) and transcriptions thereof.
>
> **ANSWER TO REQUEST NO. 7:** In addition to the documents supplied above. See attached.
>
> **REQUEST FOR PRODUCTION NO. 8**: Produce all documents that evidence or refer to communications, whether oral or written, between you and any person other than a current or former employee or agent of J & J (excluding your legal counsel) related to the subject matter of your claims, including, but not limited to email communications, notes memoranda, text    messages, instant messages, and any tape or digital recordings (whether audio or visual) and transcriptions thereof.
>
> **ANSWER TO REQUEST NO. 8:** Plaintiff's copies of these documents were lost and/or destroyed in the August, 2016 flood of her home.

---

[45] R. Doc. 18-3.

**REQUEST FOR PRODUCTION NO. 15**: Produce any documents which refer or relate to, or evidence, your attempt to obtain or expand your employment both during and after your separation from employment with J & J; including but not limited to, copies of employment applications, resumes, correspondence, notes, emails, memoranda and other documents to and from potential employers or employment agencies.

**ANSWER TO REQUEST NO. 15:** Plaintiff made all such applications and documents online and does not possess any copies presently.

Defendant asserts Plaintiff's responses to Requests for Production numbers 7, 8, and 15 are deficient because "[t]he August 2016 flood would not prevent Plaintiff from producing any electronically stored information that is responsive to this request (e.g., email communications, text messages, etc…)."[46] With respect to Plaintiff's response to Request for Production number 15, Defendant further contends that Plaintiff has the legal right and practical ability to obtain copies of any job applications that were submitted to potential employers and therefore such documents are within her custody and control.[47] The court agrees that generally, it would seem that a natural disaster such as a flood would not prohibit a party from accessing electronically stored information via another source, and that Fed. R. Civ. P. 34(a)(1) requires a party to produce documents "in the responding party's possession custody, or control." Here, however, the issue of accessibility of electronically stored information (including emails and archived social media) was explicitly discussed during the March 3, 2017 telephone conference with the parties, and counsel for Plaintiff was instructed to revisit this issue and consider accessibility of such information via a device other than the device purportedly lost by Plaintiff due to flooding.[48] The court ordered that "in the event counsel for Plaintiff confirms that Plaintiff has produced all documents within her possession and

---

[46] R. Doc. 18-3.

[47] R. Doc. 18-3.

[48] R. Doc. 19.

control (including all electronically stored information), Plaintiff shall submit a supplemental verification attesting to that fact to Defendant....["49] In response to the court's order, Plaintiff submitted a sworn verification attesting that she had produced all electronically stored information within her possession and control.[50] In light of this sworn verification, the court cannot compel additional responses to Requests for Production numbers 7, 8, or 15. Accordingly, the court DENIES Defendant's Motion to Compel to the extent it seeks to compel Plaintiff to supplement written responses to Requests for Production numbers 7, 8, or 15.

> **REQUEST FOR PRODUCTION NO. 23**: Produce any and all documents related to your attempts to correspond or communicate with current or former employees of J & J by electronic means, including, but not limited to, Facebook, Myspace, Twitter, LinkedIn, Snapchat, text message, and email from October 28, 2014 through the present.

> **ANSWER TO REQUEST NO. 23:** Objection. Said request for production seeks documentation of an irrelevant nature that is also violative of plaintiff's rights to privacy.

Defendant asserts that Plaintiff's response to Request for Production number 23 is deficient because Plaintiff's objections have been waived and because Plaintiff's position regarding the private nature of these electronic communications is contrary to law.[51] Accordingly, Defendant requests that Plaintiff "produce any responsive documents that relate to Plaintiff's employment with J&J or her claims in this lawsuit at your earliest possible convenience."[52] As this court has recently noted, "social media is generally discoverable." *Scott v. United States Postal Service*, 2016 WL 7440468, at * 4 (M.D. La. Dec. 27, 2016) (citing *Farley v. Callais & Sons, LLC*, 2015 WL 4730729 (E.D. La. Aug. 10, 2015) (ordering plaintiff to provide social media postings to his

---

[49] R. Doc. 19.
[50] R. Doc. 21-4.
[51] R. Doc. 18-3.

[52] R. Doc. 18-3.

counsel for determination of whether the postings are relevant and responsive to discovery requests); *Johnson v. PPI Tech. Servs., L.P.*, 2013 WL 4508128, at *1 (E.D. La. Aug. 22, 2013) ("Courts have recognized that social networking site ('SNS') content may be subject to discovery under Federal Rule of Civil Procedure 34.") (citations omitted); *Davenport v. State Farm Mut. Auto. Ins. Co.*, 2012 WL 555759, at *1 (M.D. Fla. Feb. 21, 2012) ("Generally, SNS content is neither privileged nor protected by any right of privacy." (citation omitted)).

Despite Plaintiff's sworn verification, it appears that Plaintiff has only objected to Request for Production number 23 (*i.e.*, she did not, in contrast to her other responses, provide documents subject to her objections). As set forth above, this court has already granted Defendant's Motion to Compel a written response to this request with the untimely objections omitted. Accordingly, the court also GRANTS Defendant's Motion to Compel to the extent it seeks an order compelling Plaintiff to supplement her written response to Request for Production number 23 with responsive documents.

> **REQUEST FOR PRODUCTION NO. 27**: Please produce detailed records for any and all cell/portable phones or communication devices issued to or operated by Plaintiff from October 28, 2014 thru August 31, 2015.
>
> **ANSWER TO REQUEST NO. 27:** The requested documents are not in the possession of the plaintiff.

Defendant contends that Plaintiff has the legal right and practical ability to obtain copies of any job applications that were submitted to potential employers and therefore such documents are within her custody and control.[53] For the reasons set forth above with respect to Requests for Production numbers 7, 8, and 15, the court also DENIES Defendant's Motion to Compel to the

---

[53] R. Doc. 18-3.

extent it seeks an order compelling Plaintiff to supplement her written response to Request for

Production number 27.

**REQUEST FOR PRODUCTION NO. 40**: Please produce copies of all postings that you made on any social media website, including but not limited to, Facebook, Twitter, LinkedIn, Google Plus, Snapchat and Tagged from October 1, 2014, through the date of response to the Request relating in any way to your employment and/or separation from J & J, or the allegations in your Complaint. Specifically with respect to Facebook, J & J is seeking a copy of Plaintiff's Facebook "archive" from January 1, 2014, through the date of response to the Request.

Please use the following instructions to create the Facebook "archive":

1. Log into your Facebook account
2. Click on the "down arrow" icon, to the right of the "Home" icon (upper right- hand corner).
3. Select "Settings".
4. Click on "Download a copy of your Facebook Data" (below "Language").
5. Click "Start My Archive."
6. Re-enter your password.
7. Click the "Start My Archive" again.
8. You will receive an email with a file attachment.

If you have a Twitter account, please obtain an archive of your tweets for production. To do this, follow these instructions.

1. Log in to your twitter account.
2. Click the "gear" icon.
3. Click on settings
4. Toward the bottom of the page, click "Request Your Archive".
5. You will receive an email with a file attachment of your Twitter account.

**ANSWER TO REQUEST NO. 40**: None

Despite Plaintiff's answer to Request for Production number 40, Defendant asserts that "Plaintiff has neither objected nor produced any documents in response to Request for Production No. 40. Please produce the requested documents at your earliest possible convenience."[54]

As the court reads Defendant's Request for Production number 40 and Plaintiff's response thereto in light of her sworn verification, it appears that Plaintiff contends that she has no postings within her possession or control that she "made on any social media website, including but not limited to, Facebook, Twitter, LinkedIn, Google Plus, Snapchat and Tagged from October 1, 2014, through the date of response to the Request relating in any way to [Plaintiff's] employment and/or separation from J & J, or the allegations in [Plaintiff's] Complaint." The court finds this to be a sufficient response to the first portion of Request for Production number 40. However, Plaintiff's response does not appear to address the second portion of Request for Production number 40 – Defendant's request that Plaintiff provide archived versions of her Facebook and Twitter accounts. Based on Plaintiff's response to Interrogatory number 19, it appears that Plaintiff maintained a Facebook profile during the relevant time period. Accordingly, the court GRANTS Defendant's Motion to Compel to the extent it seeks to compel Plaintiff to supplement her response to Request for Production number 40. The court ORDERS Plaintiff to provide the archived version of her Facebook account from January 1, 2014 through present within fourteen (14) days of this Ruling and Order.

### C. Defendant's Request for Attorney Fees

As noted above, the court previously reserved the issue of Defendant's request for an order awarding Defendant its reasonable attorney's fees associated with the filing of the Motion to

---

[54] R. Doc. 18-3.

Compel.[55]  Under Rule 37(a)(5)(A), if a motion to compel discovery is granted, or disclosure or discovery is provided after the motion is filed, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  *See also*, *Nguyen v. Louisiana State Board of Cosmetology*, 2016 WL 67253, at * 3 (M.D. La. Jan. 5. 2016) ("Because the Court has granted Defendant's Motion to Compel and no exceptions apply, Defendant is entitled to an award of reasonable expenses, including attorney's fees.").  The rule provides an exception to an award of expenses where "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust."

Here, Plaintiff provided her discovery responses after the filing of Defendant's Motion to Compel.  Although Defendant clearly sought an award of fees in its original motion, thereafter stated in its Supplemental Memorandum that it intended "to pursue its request for attorney's fees and costs incurred in connection with its motion to compel,"[56] and this court explicitly reserved the issue of Defendant's request for fees and costs during the March 3, 2017 telephone conference, Plaintiff has provided no response to Defendant's request for an award of fees and costs, despite being given an opportunity to respond to the request.

Nonetheless, "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."  *Nguyen v. Louisiana State Board of Cosmetology*, 2016 WL 67253, at * 3 (M.D. La. Jan. 5. 2016).  Defendant has not asserted a specific amount of expenses it contends would be reasonable, nor has it submitted evidence of

---

[55] R. Doc. 19.
[56] R. Doc. 15-2, p. 2.

the amount of expenses incurred.  In such a circumstance, this court finds an award of $500.00 is reasonable.  *See*, *Doucet v. Dormont Manufacturing Co.*, 2014 WL 2434472, at * 4 (M.D. La. May 29, 2014) ("Defendant did not claim a specific amount of expenses incurred in filing its motion. However, a review of the motion and memoranda supports the conclusion that an award of $450.00 is reasonable."); *Rivera v. Martin J. Donnelly Antique Tools*, 2015 WL 6872506, at * 3 (M.D. La. Nov. 9, 2015) ("Plaintiff has not demonstrated any circumstances which would make an award of expenses to the defendant unjust.  Defendant did not submit anything to establish a specific amount of expenses incurred in filing this motion.  A review of the motion papers supports finding that an award of $500.00 is reasonable.").

### III.     Conclusion

For the reasons set forth herein, the court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Compel Discovery and Initial Disclosures.[57]  Specifically,

The court **DENIES** Defendant's Motion to Compel to the extent Defendant seeks an order compelling Plaintiff to provide Initial Disclosures, a sworn verification, Bates labeled documents, and/or clear/more legible copies of certain documents as moot.

The court **DENIES** Defendant's Motion to Compel to the extent Defendant seeks to compel Plaintiff to resubmit her responses to Interrogatory numbers 2, 3, 6, 7, 9, and 16 or Requests for Production numbers 1, 2, 4, 11, 32, 33, 37, 39, or 41 with the untimely objections omitted.

The court **GRANTS** Defendant's Motion to Compel a written response to Request for Production number 23 with untimely objections omitted.  The court also **GRANTS** Defendant's Motion to Compel to the extent Defendant seeks an order compelling Plaintiff to supplement her written response to Request for Production number 23 with responsive documents. The court

---

[57] R. Doc. 12.

**ORDERS** Plaintiff to provide a complete response to Request for Production number 23, without objections (with the exception of any objections pertaining to any applicable privileges and/or immunities), no later than fourteen (14) days from the date of this Ruling and Order.

The court **DENIES** Defendant's Motion to Compel with respect to Requests for Production numbers 18 and 26 as moot.

The court **DENIES** Defendant's Motion to Compel to the extent Defendant seeks to compel Plaintiff to supplement written responses to Requests for Production numbers 7, 8, 15, and 27.

The court **GRANTS** Defendant's Motion to Compel to the extent Defendant seeks to compel Plaintiff to supplement her response to Request for Production number 40. The court **ORDERS** Plaintiff to provide the archived version of her Facebook account from January 1, 2014 through present within fourteen (14) days of this Ruling and Order.

**IT IS FURTHER ORDERED** that Defendant's request for reasonable expenses and attorney's fees under Fed. R. Civ. P. 37 is **GRANTED**. Plaintiff is **ORDERED** to pay Defendant $500.00 for the costs and attorney's fees it incurred in filing the Motion to Compel.

**Failure of Plaintiff to comply with the terms of this Order may result in additional sanctions.**

Signed in Baton Rouge, Louisiana, on May 23, 2017.


**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**